JOHN S. DYSON, as Commissioner of Agriculture and Markets of the State of New York, Respondent, v MILES LABORATORIES, INC., Appellant.

Third Department, May 5, 1977

*Covington & Burling (Eugene I. Lambert pro hac vice)* and *De Graff, Foy, Conway & Holt-Harris* for appellant.

*Thomas G. Conway (Charles J. Pugliese* and *David A. Engel* of counsel), for respondent.

GREENBLOTT, J. Defendant is engaged in the manufacture, distribution, sale and marketing of four food products labeled as "Morningstar Farms Breakfast Links", "Morningstar Farms Breakfast Patties", "Morningstar Farms Breakfast Strips" and "Morningstar Farms Breakfast Slices". Plaintiff Commissioner of Agriculture and Markets commenced an action to permanently enjoin defendant from distributing, marketing, selling and advertising these products as labeled. The first four causes of action in the complaint allege that each of the four products is an "imitation" within the meaning of subdivision 3 of section 201 of the Agriculture and Markets Law and that, therefore, the product is misbranded. Defendant moved to dismiss these four causes of action upon the ground that subdivision 3 of section 201 of the Agriculture and Markets Law is unconstitutionally vague and indefinite. Upon denial of the motion, this appeal was taken.

Section 201 provides:

"Food shall be deemed misbranded: * * *

"3. If it is an imitation of another food, unless its label bears the word 'imitation' and immediately thereafter the name of the food imitated in type of uniform size and equal

prominence, followed by a statement showing the constituents thereof."

Defendant contends that the flaw lies in the phrase "imitation of another food". While there are no New York decisions directly on point, we are of the view that Federal decisions under the essentially identical Federal statutory provisions satisfactorily establish the constitutional validity of the language in question. The Federal statute, subdivision (c) of section 403 of the Federal Food, Drug and Cosmetic Act (US Code, tit 21, § 343, subd [c]), provides that a food shall be deemed misbranded "[i]f it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word 'imitation' and, immediately thereafter, the name of the food imitated." In *62 Cases of Jam v United States* (340 US 593, 599), the Supreme Court explained:

"[T]he product with which we are concerned is sold as 'imitation jam.' Imitation foods are dealt with in § 403 (c) of the Act. In that section Congress did not give an esoteric meaning to 'imitation.' It left it to the understanding of ordinary English speech. And it directed that a product should be deemed 'misbranded' if it imitated another food 'unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated.' "

In *United States v 651 Cases, More or Less, of Chocolate Chil-Zert* (114 F Supp 430), the court, faced with the question of whether Chocolate Chil-Zert was imitation ice cream within the meaning of the act, again had little difficulty defining "imitation". To be misbranded, it was not necessary to find that the labeling was intended to be misleading or deceptive. The appellant in *Chil-Zert* claimed its product was a new one, not an imitation intended to be passed off as ice cream. A similar claim is made here as to breakfast foods intended as substitutes for sausage, bacon and the like. The court in *Chil-Zert* again recited the "ordinary understanding" of "imitation" as an adequate statutory definition, holding that no all-inclusive test of what constitutes an imitation could be prescribed.

"It would seem that imitation is tested not by the presence or absence of any one element of similarity, but rather by the effect of a composite of all such elements. As indicated above, Chil-Zert is identical with ice cream in its method of manufacture, packaging and sale. It is similar in taste, appearance,

color, texture, body and melting qualities. It has identical uses * * *. It is inescapable that the ordinary understanding of English speech would denominate it as an imitation of ice cream" *(id.,* pp 432-433).

The court at Special Term held that "the determination of whether one product is imitative of another depends upon the composite of the totality of factors present in a given case including such elements as resemblance in smell, taste, color, texture, customary packaging, method of manufacture." Of course, the resolution of this question must await the presentation of proof. At this state of the proceedings, we need only be satisfied that the statute which is sought to be enforced passes constitutional muster. In light of highly persuasive Federal authority, we are so satisfied.

Defendant next contends that the unconstitutional vagueness of the term "imitation" is demonstrated by the fact that the Food and Drug Administration has promulgated regulations establishing specific standards of nutritional inferiority as a test of whether one product is an imitation of another. The absence of any such standards under the State statute, it is urged, establishes its invalidity. We disagree. In *Federation of Homemakers v Schmidt* (539 F2d 740), the court held that the reasonableness of the definition of "imitation" as applied in the *Jam* and *Chil-Zert* cases did not prohibit the agency responsible for enforcement from promulgating more specific standards.

Defendant goes on to argue, however, that Federal regulations must be engrafted onto the meaning of the New York law so that in the absence of any allegation that defendant's products are nutritionally inferior, these actions cannot be maintained. It relies for this proposition upon section 214-b of the Agriculture and Markets Law, which provides as follows:

"The authority to promulgate regulations for the efficient enforcement of this article is hereby vested in the commissioner. This article and the regulations promulgated thereunder shall be so interpreted and construed, however, as to effectuate its general purpose to enact state legislation uniform with the federal act approved June twenty-fifth, nineteen hundred thirty-eight, and all acts amendatory thereof and supplemental thereto.

"The commissioner is hereby authorized (1) to adopt, in so

far as practicable, the regulations fixing and establishing definitions and standards of identity and/or standards of quality, and tolerances, for foods or food products from time to time promulgated under the federal act or acts, and (2) to change or amend the regulations promulgated under this chapter fixing and establishing definitions and standards of identity, and/or standards of quality, and tolerances, so as to conform in so far as practicable, to those promulgated under the federal act or acts.

"The commissioner shall hold a public hearing upon a proposal to promulgate any new or amended regulations under this article, except in the case of a proposal to adopt an applicable regulation promulgated under the federal act or acts."

Again, we disagree. While the above-quoted statute clearly suggests Federal and State uniformity as a desirable result, we do not read it as requiring the adoption of all Federal regulations. Were it otherwise, the grant to the commissioner of discretionary authority would be without meaning.* Nor are we of the view that nutritional inferiority is a required element of an "imitation" under the case law. To the extent that inferiority has been referred to in the cases herein discussed, such references are mere dicta which do nothing more than indicate that nutritional content is a factor which may but need not be considered under the totality of factors test which is applicable under the New York statute.

It is worthy of note, moreover, that to the extent the commissioner has elected to adopt Federal regulations *in toto,* they are specifically enumerated in section 259.1 of the regulations of the Department of Agriculture and Markets (1 NYCRR 259.1). The Federal regulation claimed by defendant to be applicable (21 CFR 1.8 [e]) is not included therein.

The order should be affirmed, with costs.

KOREMAN, P. J., MAIN, LARKIN and HERLIHY, JJ., concur.

Order affirmed, with costs.

* Where the Legislature has intended to mandate the adoption of Federal standards in interpreting and applying New York law, it has done so with greater specificity. (See, for example, Tax Law, art 22.)